Our second case this morning is number 20-1411 United States v. Murphy. Mr. Yannonek and Mr. Cerruti and Mr. Yannonek, you're first. May it please the court. Good morning, your honor. I'd like to reserve two minutes for rebuttal. Yeah, better announce your name just for the... I'm John Yannonek. I'm from Thomas Thompson Hafer in Harrisburg, Pennsylvania. Alrighty, thank you very much. Go ahead. Then two minutes for rebuttal is fine. Yes, I represent James Murphy. He's a court-appointed client of mine. This is an appeal of his first step act resentencing. Originally, Mr. Murphy was indicted in 2008 for two counts. One, a conspiracy with intent to distribute 50 grams or more of cocaine base or crack. Also, a second count of possession and distribution with intent to distribute 50 grams or more of cocaine base or crack. At the time, both of those counts carried life maximums. He went to trial, was found guilty. His original pre-sentence investigation report came up with a sum of 595 grams of crack cocaine and 24 grams of heroin. These drug amounts were objected to in the original PSR addendum, and that's noted. But no matter how you slice it, it's greater than 50 grams, right? Right, but at the time, there really wasn't a lot of focus on that drug quantity because once you got over 50 grams, you were in the life sentence max, and because Murphy was a career offender, he was already going to be escalated to a level 37, category six criminal history. Yeah, it was 37.6, and he got 360 to life, and then you have the first step act, and you get a resentencing. I guess the question here is, did the district court err in failing to reconsider the applicable drug amount in the resentencing? There are two errors that the district court made, your honor. That's the one. We know from the new case, the Eastern case, that on page 15 of that case, the circuit said, we're going to join the sixth circuit and the fourth circuit where we're going to first, and we're going to have these resentencings, we're going to first have an accurate calculation of the amended sentencing guideline range, and then a thorough review of it. Mr. Yonan. Go ahead. Go ahead, Stephanos. Sorry. So I've looked back at the briefing in that case. That case is about whether to take a holistic view of the facts that are before the court. No one briefed, no one argued, no one had occasion to argue whether you update the facts and update the law or not. So they quoted a sentence from the sixth circuit that's helpful for you. They cited a case or two that are on that side of the split, but that issue wasn't before it. And the government cites another sentence from later in the opinion that says, you don't get a plenary resentencing that the defendant is present at, but that's also out of context. So I'm not sure that Easter really has much to say for us either way. If it's not binding on us, tell us why either we should find those isolated statements persuasive, or maybe more cogently why the reasoning of the fourth and sixth circuits on the issue before us is the reasoning we should follow. Well, if you look at the Chambers case, your honor, we're almost on all fours regarding the career offender issue because... Chambers is the fourth circuit case. That's the next issue we're talking about. At this point, let's talk about drug amount, and then we'll get to the career offender issue. Yeah. Well, I mean, I don't think you can argue one without the other because Chambers felt that you had to have an accurate, you had to start with an accurate sentencing calculation, an accurate guideline calculation. So if you start with... Okay, let's parse it out. You can't really go beyond that. Let's parse it out. With respect to the drug amounts, what exactly is the error with respect to the attributable drug amounts here? I mean, did the PSR get it wrong? The jury made a finding of 50 grams. Or more, or more. Or more. There was no further inquiry made. There was no further specific finding by the jury as to, you know, was it much more than that because at the time they didn't really care. All right. But the jury, you know, jury doesn't have to find sentencing facts. So what error did the district court make at sentencing? What did it, or did your client make an argument or a proffer that was rejected? Well, they made an objection clearly that was found, it's found in the record, in the PSR addendum at the original sentencing, which the trial court incorrectly in its footnote in the opinion in appendix 14 says there was no objection made by Murphy originally. So I think, I think there has to be a calculation of what amount of cocaine base above 50 grams was truly attributable. So your client could have challenged that at the time. He didn't challenge it or repeal it. Your explanation is at the time it didn't really matter and now it matters, but, but there was a way of challenging it then. And the question is, should we open it up now, again, now that it matters? Well, he did challenge it for what it's worth. Okay. He challenged it at a trial, but he didn't, he didn't appeal what you say is an error of the way that it computed the drug quantity. It didn't matter back then. Correct. Yeah. It was moved. So why should we take this anew? It'll help if you can focus on what in chambers and what in the first step act tells us we should approach this anew. I've got the text of the act before us. If you want to talk about chambers reasoning, that's great. If you want to go to the act, but I'd like at some point to hear both about the text and about the cases on your side. Well, we talked in my brief, I talked about how the act vacates the original sentence. Can you point to the language in the act that helps you? I'm looking at section 404 now, what language in the act helps you? It talks about starting anew, vacating prior sentence and imposing a new sentence, not correcting a sentence. Okay. So the verb impose helps you. That sounds like it's a new sentence. Okay. And I think I can't remember if it was the fourth or sixth circuit that leaned on that. When I look at 3582 though, the entire section is called imposition of a sentence of imprisonment. But then under that heading, they got C, modification of an imposed term. And 82C is not a completely new sentencing. So elsewhere, Congress has treated modification under that broad umbrella. I'm not sure that it leans your way, but I'm not sure it resolves the issue. Why should we give real weight to that? I think that the circuits on the other side, like the fifth say, well, there's this language about as if the fair sentencing act were in effect. That's the one thing that gets tweaked. Why should we say that the word impose outweighs as if, and blows open, not just that, but everything else about the sentencing? I think I cited some of the legislative history behind the act. Let's talk about the text first, and then we can go to the legislative history. Why do you think textually this leans in favor of a plenary resentencing? Is there anything else about the text besides the verb impose? I can't think of any right now. All right. Tell us about the legislative history then. Well, I think what I've cited is the idea was behind trying to lower these sentences for people because of the situations that they were faced. I cited some of that in my first brief. All right. But a law is a bunch of compromises. Some people wanted more reductions, some wanted fewer. Congress was balancing leniency against finality. So they struck out a bargain or a compromise, and it wasn't as lenient as some people wanted. It was more lenient than other people wanted. So it doesn't really resolve how plenary the resentencing ought to be. Was there anything in legislative history that really spoke to this particular issue? I don't believe so. Okay. So you're just relying on a generalized policy of leniency. Got it. Is there anything in the other circuits' cases, the Fourth Circuit or the Sixth Circuit, say that you want to draw our attention to? None that we haven't talked about as far as what's in chambers and bounding. Okay. Can I ask you about something? I think it's more from the Tenth Circuit had a footnote said, hey, you know, whether this goes into the guidelines or not, the court remains free to vary downward. Would that be an acceptable compromise to kind of stick with the original guidelines calculation but remind district courts that you can still vary based on this stuff? You don't have to do a plenary resentencing, but you've got some wiggle room here if you want it. Well, it's your definition of what a plenary resentencing is. I think as you read this new case, it talks about not letting the person attend, but getting the guideline calculations correct is more important than accurate calculation of the amended guideline range. So I think that's the key component where you start from. It's like negotiating a personal injury case where you start with a really high number and just say we'll give you something off of it. All right, that's a good segue into the second issue. Let's assume for the moment this district court was technically wrong in preventing you from challenging Murphy's career offender designation. Did the court still sentence Murphy as if he wasn't a career offender? We don't know that. They did, you know, the judge did give Murphy a variance, but when you're a career offender... It sounds like he's talking about the fake, the career offender and basically said, look, I'm going to just, I'm just going to take the guidelines that would be in effect. I'm going to assume that that's the case, but I'm going to send you to 210, which would be the high range of the sentencing guidelines were the career offender status not in place. And it seems to me that there's no harm here because no matter what we do, it would seem that the court is going to resentence him for the same 210 months. And the reason I say that with sure conviction, just three months ago, you had judge Jones considering the COVID compassionate release motion. And he says in there, this is on August 20, the sentence section 3553A factors also strongly favor maintaining the current sentence. That's 210. Just six months ago, reduced Murphy's sentence from 360 months to 210 months pursuant to the first step act. At the time of the resentencing on February 19, we fully considered the 3553A factors and noted that Murphy was responsible for trafficking a significant amount of crack cocaine into the middle district of PA. We further took into consideration, he would no longer be considered a career offender under the current status of the law when fashioning a downward adjustment of his sentence. We did not, however, accept his invitation to sentence him to a time served sentence largely because significant criminal record, the fact that he was on federal supervised release when he committed the incident offense demonstrating a considered and continued disrespect of the law in danger to the public. Isn't that game set in match in terms of no felt that he was a career offender nonetheless, but he did under the guidelines. So, he had to start with that incorrect assumption before he goes beyond that to give him a variance. I still think- Let me ask you a basic question. Having the designation career offender, if that designation continues, does that provide prejudice in other situations and other considerations and other offenses? The fact that he has been designated a career offender in this case? I'm not 100% sure, but I can imagine that if he's a career offender, that's part of what the Bureau of Prisons takes into account as far as how they treat him certain ways, perhaps. If he's a career offender, I think it carries a certain stigma to it. You start out with that as your beginning point in any sentencing. Okay. Yeah. Good. Thank you. Thank you. Any further questions? All right. Let's hear from Mr. Cerruti, and we'll get you back in rebuttal. Good morning, your honors. May it please the court, Stephen Cerruti on behalf of the United States. Just turning first to the attributable drug weight question and the objection that was raised initially, way back at the initial sentencing in this case. Yes, Mr. Yannick is correct. There was a kind of general objection to the factual background that was presented in the PSR. There was no specific objection to the attributable drug weights. And if you look at the sentencing memoranda that was filed prior to sentencing at that time, it was different counsel for Mr. Murphy, but the objection that he spelled out seemed to be more to the fact that, well, there may not have been enough evidence to prove that this was crack cocaine as opposed to powder cocaine. And thus, the argument at that point was that Murphy should not be an 841B1A defendant, but should be an 841B1B. So instead of facing the life maximum with the 10-year minimum, he should have faced the 40 maximum with the five-year minimum, which is exactly what he has now been, how he has now been sentenced. So in effect, he has gotten exactly what he wanted in that original sentencing memorandum. And even when we look at the First Step Act resentencing here, Mr. Yannick brought up an objection to the attributable drug amounts in a pre-sentencing conference. I wasn't involved at that point, so I was not in that pre-sentencing conference. But 11 days later, when you look at the sentencing memorandum that Mr. Yannick filed, again, he's not talking about the factual or the factual question of what the exact attributable drug amount was. At that point, there was still a disagreement between the government and Mr. Murphy as to whether he had committed a covered offense. That was during a time period when there was still the debate whether you look at the actual conduct or whether you look at the crime of conviction. That has been resolved by this circuit in Jackson. The United States has now altered its position and does not anymore argue that upon the First Step Act resentencing that Mr. Murphy should have been sentenced as a sub-A as opposed to a sub-B. Everyone is in agreement that it's the 5 to 40. And so all that can be argued here by Mr. Murphy is that the court should reopen the basic factual assessment of what drug amounts are at issue. And that's not proper. That would be part and parcel of a plenary resentencing. Can you explain why it's not proper? I mean, the language of imposing a sentence ordinarily means you go through a whole bunch of steps in the Sentencing Reform Act. Why is it improper when, you know, what language do you point to in the Act when it does talk about, your friend mentions, imposing a reduced sentence, not reducing an existing sentence? Well, sure. When you look at the word impose in isolation, that would normally, yes, indicate that you would go through a full sentencing procedure. However, when you look further into 404B, as Your Honor has pointed out, there is the talk about, you know, imposing a reduced sentence, not necessarily a new sentence, as opposed to just a reduced sentence, as if Sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed, which is the Ninth Circuit in Kelly, the Fifth Circuit in Hegwood, I'm blanking on the other case now, Foreman, the Sixth Circuit in Foreman, talked about, you know, that is going to mean when you look at it and refer to Dillon, the Supreme Court's decision in Dillon, and interpreting 3582C2, you take all of that together, and the most sensible conclusion is, and this has been reached by every court, or at least been stated by every court, including this one in Easter, that a First Step Act resentencing is not a plenary proceeding. However, the Sixth Circuit opinion in Foreman, there's contrary shading in Boulding, is there not? It seems to require a district court to allow a defendant to challenge sentencing enhancements on resentencing, and we expressly adopted the Boulding reasoning in Easter. Well, Boulding, I think, can't be read in isolation. It has to be read along with Foreman. And yes, Boulding talks about, you know, accurately calculating the amended guidelines, but it cites the Foreman for support for its position that you can look at 3553A factors, which this court has concluded as well, obviously, in Easter, but it doesn't overrule what was said in Foreman about how you don't have a plenary from challenging his previous career offender designation. And the way that you make those squares, if you look at it, and this is the way at least I read it, that when it's talking about the district court looking at the, or correctly calculating the amended guidelines, that's the amended guidelines as they were amended to reflect the Fair Sentencing Act after 2010, and looking at that as part of the 3553A analysis, which, frankly, is exactly what the district court did in this case. Mr. Cerruti, Easter, as I said, it didn't breathe for argue or hold on this question, but the reasoning sort of leans towards, you know, a more fulsome, a less crabbed approach to resentencing, certainly than the government advocated in the Easter case. You know, we're supposed to do a holistic analysis of the factors. Tell me about how you propose, what rule the government proposes and how that harmonizes with Easter or would harmonize with what we held in reason there? Well, I think the most common or the most obvious reading of Easter, at least to me, and I may not be the sharpest tool in the shed, I don't know, you know, the amended guidelines, you basically do what the district court did here. The district court, you know, chose not to go back and look at recalculating the attributable drug amounts. It said, I'm not going to revisit the career offender designation. However, I am going to, as part of the third step of the sentencing process, where I'm going to look at the 3553A factors, and he did, and Easter now requires the district court to do that when you have a first step act resentencing, I'm going to take it into consideration at that point, basically the third step of the sentencing process and make a decision about whether to exercise the judges, the district court judges discretion in light of the fact that there's no disagreement. And in this particular case, that the fourth circuit no longer consider some of these predicate offenses to be career offender predicates. And so it doesn't change what would be step one of the sentencing process, the calculation of the original guidelines. You don't have to get into all sorts of additional fact finding there, but you can take it into consideration as part of step three, which is consideration of the 3553A factors and the history of the defendant, the applicable guidelines. So the government would be satisfied with that compromise that was suggested in the Moore footnote that considering these factors as a matter of discretion at the variant stage is fine, but not no right to a plenary resentencing of the computation of the guidelines based on new facts or new law. Well, that's that's the way that I can kind of square everything with what was decided in Easter. Obviously, our position in Easter was not necessarily that what the judge did there was correct. And we certainly don't think that we should be looking some retroactively at these career offender designations. But if you're going to look at 3553A factors, which this court now requires district courts to do in First Step Act resentencings, there's broad discretion there. We all are familiar with that from case after case after case. And there I can understand and would certainly see why a judge would want to look at a situation such as this. Isn't one of the things in Easter is that you need to reconsider the 3553A factors as they stand at the time of resentencing. And it would seem that one of the requirements of 3553A specifically is a consideration at step one of the accurate guidelines range in a given case. So in this case, what is the accurate guideline range? Well, if you were doing it under current law, I think it was the 262 to 327 that was calculated by the district court in the probation office. And that basically is doing career offender with his what is it 34-6 or is it 37-6? Well, 34-6. And actually, right. Excuse me. And so you're saying that's the accurate. And it looks like what the court said was, I'm not quite sure what the language you called it. Okay. We understand that it's like a fake guideline range. But so I'm going to give you a variances based on what Mr. Yannick has sort of glibly indicated as a fake career offender designation. Well, it is what it is. And that's the law under the circumstances. But I can take that into consideration for purposes of a variance. And that's when he went into the 210. Correct. Does having been designated a career offender have any repercussions later in this case, in other cases, in other situations, and how an offender is considered, for instance, by the Bureau of Prisons? As I sit here, I can't say that I'm aware of any adverse consequences with the Bureau of Prisons. Of course, if Mr. Murphy were to be released and convicted of another crime, it would not surprise me if the prosecutor in that case tried to point back to a previous court finding him to be a career offender. But of course, at that time, Mr. Murphy would be able to point to Royal and the cases out of the Fourth Circuit that would say that he's not actually a career offender. Wouldn't it be a little late for that? I mean, wouldn't the judge say, well, that's fine, you've never contested that. You have this career offender designation. You were even resentenced with this career offender designation. How can I consider that that's not an accurate designation? Well, I think what I'm talking about in that hypothetical is that it would be an additional crime that he commits down the road, at which point I think the district court would be obligated to look at all of those facts anew, regardless of what the district court did in this first step back to resentencing or what may have happened prior in this particular case. I find that not a realistic... From my experience in sentencing, I cannot remember having reexamined such a designation in a prior case. I've never been a judge. Getting a career offender designation seems to me that's like you're a high school graduate. You will be considered that in the future. Well, I can't say that I've addressed that issue on any appeal I've ever handled or in the district court, so I don't know exactly what the law would have to say as to whether once a career offender, always a career offender for all prosecutions in the future, so I'm afraid I can't answer that. Mr. Surdy, before we let you go, is there anything in the act besides the phrase as if that you'd point to as support for your reading of it? Of the sections of the act that I have reviewed in preparation for this, I'm not thinking of involving 3582C sentence reductions, DILN, which obviously was C2 as opposed to C1B, so I think it's that language combined with the prior precedent that's been cited in my brief and that we've discussed here today. Any further questions? Nothing further. Nothing further. Thank you. Thank you. I just want to go back to talk about Easter. Easter clearly makes Murphy's career offender designation a fake career offender designation because if Easter is going to follow Chambers, the Chambers case clearly changed or disallowed the use of the career offender designation when it sent that case back to the district court. There's a 42-month difference. That sentencing, when you said fake career offenders designation, what did you mean by that? Because we all knew because of the law, it wasn't real. It was fake because the judge somehow thought he had to apply the old designation before the law changed, which is crazy. I think it's just we know that there are going to be people sentenced and there's not supposed to be disparities in sentencing, so no one uses the old law for sentencing at the specific time when Murphy was sentenced, so I just think it's just a real serious mistake to have done that, to give him that stigma, to make him a career offender. Yes, my own experience with Judge Jones is he's not a top end of the guideline sentencer, so if he did have a guideline range of 168 to 210, you can look at his COVID appeal and try to use that language, Your Honor, but I don't think we know what Judge Jones would give Mr. Murphy, and I think based on Chambers, you should be given that opportunity to resentence Murphy and not use the career offender designation. Thank you. It almost looks as if what he did formally was say the career offender is part of the sentencing guideline calculation, but he's going to be practical and sentence based on the 168 to 210 range, he would go to the higher end of that range and he would stay there because of the fact that the crime was committed while he was on probation, etc., and so the only question really comes down to is there truly something that would prejudice him in the future if he committed other crimes by virtue of being previously considered under the sentencing guidelines as a career offender? He could go to state court and the prosecutor could say he was a career offender and arguing that in front of a state judge. So isn't the most you can really get is, okay, you would get a remand, possibly, and you would consider whether the Maryland offenses truly were predicate offenses under, I guess, Royal, is that right? Yeah, I don't think there's any dispute that the second degree assault is no longer a predicate offense. No one's ever challenged that in any of the process that we've been involved in. So, you know, if it weren't, I think the prosecutors would have said something. So I think we're going to see that Murphy's not a career offender and then, at a minimum, let's see what the judge gives him between 168 and 210 because I think the judge thought he was giving Murphy a break before, but he's really not giving him a break because he's sentencing him out of the top end of the guideline. Well, as I said before, I would make a bet that the sentence will be the same, but the question then, the only question for me becomes is later on, again, if he commits other crimes and is resentenced in another venue or court, will the career offender status from this case, albeit not sentenced as a career offender, ultimately, will it make a difference in his situation having committed another crime? Well, it's a stigma that's going to be potentially used against them. You have no evidence to support that. This doesn't show up on a rap sheet. You're just speculating as far as I can tell, right? Well, it doesn't show up on a rap sheet, but, you know, the government has a tremendous amount of resources to find out what someone was sentenced to and why they were sentenced to that. You can't cite anything that would establish a stigma as far as I can tell. I mean, I think anytime you're labeled a career offender, that's a stigma. But, you know, the funny thing is you did a smart thing at resentencing. You go, this is a fake career offender designation. Wink, wink. And the judge goes, I get it. Nice job. This is it. I agree with you. So, I'm going to sentencing to 210. So, in effect, I'm going to take your suggestion, nicely done, and sentencing to between 168 and 210. I'm going to go high. I'm going to go 210. And so, you walk out, you go from 360 down to 210. Great day. And now you're saying, but that ain't good enough. Well, my client says, yeah. Well, you know, the career offender designation is going to show up again if there are ever any future offenses committed. It could show up in a misdemeanor state court case. Yeah. I, we don't, it doesn't have to be a federal case. So, I come back full circle to what I just said at the outset of the rebuttal here. The best you can get is a remand to consider whether the Maryland offenses under Royal were predicate offenses for a career offender. I think I win that. And if I lose it, I'm going to be back here, I guess, on that one. I think that's a winner, clearly. No one's saying it's not. So. And the reason under Royal it's a winner is? The second degree assault is no longer a predicate offense. Because it's indivisible? Yes. Okay. All right. And it's not a change in the law, it's a change in the interpretation of the law. I'm sorry. It's not a change. It wasn't that the law was changed. It was that the law as it had been was interpreted not to be at a career offender offense. Yes. Under DeKalb. Yes. Okay. Got it. Okay. Thank you very much to both counsel. We'll take the matter under advisement and call our last case of today. Thank you again for being with us. Thank you. Thank you, your honors. Were you CJA appointed counsel? Yes, I am, your honor. Okay. Thank you.